1

2

3

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 22, 2018

SEAN F. McAVOY, CLERK

4

5          **UNITED STATES DISTRICT COURT**

6          **EASTERN DISTRICT OF WASHINGTON**

7  CINDY O.,                          No. 2:17-cv-00230-MKD

8              Plaintiff,             REPORT AND
                                      RECOMMENDATION TO DENY
9      vs.                            PLAINTIFF'S MOTION FOR
                                      SUMMARY JUDGMENT AND TO
10 COMMISSIONER OF SOCIAL            GRANT DEFENDANT'S MOTION
                                      FOR SUMMARY JUDGMENT
11 SECURITY,
                                      ECF Nos. 14, 17
12             Defendant.

13         BEFORE THE COURT on report and recommendation are the parties'

14 cross-motions for summary judgment. ECF Nos. 14, 17.  The Court, having

15 reviewed the administrative record and the parties' briefing, is fully informed.  For

16 the reasons discussed below, IT IS RECOMMENDED Plaintiff's Motion (ECF

17 No. 14) be denied and Defendant's Motion (ECF No. 14) be granted.

18

19

20

REPORT AND RECOMMENDATION - 1

1

## JURISDICTION

2      The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

3    1383(c)(3).

4

## STANDARD OF REVIEW

5      A district court's review of a final decision of the Commissioner of Social

6    Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

7    limited; the Commissioner's decision will be disturbed "only if it is not supported

8    by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

9    1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

10   reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

11   (quotation and citation omitted).  Stated differently, substantial evidence equates to

12   "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

13   citation omitted).  In determining whether the standard has been satisfied, a

14   reviewing court must consider the entire record as a whole rather than searching

15   for supporting evidence in isolation.  *Id.*

16      In reviewing a denial of benefits, a district court may not substitute its

17   judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

18   1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

19   rational interpretation, [the court] must uphold the ALJ's findings if they are

20   supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674

REPORT AND RECOMMENDATION - 2

F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v).  At step one, the Commissioner

REPORT AND RECOMMENDATION - 3

considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i);

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the

claimant suffers from "any impairment or combination of impairments which

significantly limits [his or her] physical or mental ability to do basic work

activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c);

416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

however, the Commissioner must find that the claimant is not disabled.  20 C.F.R.

§§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §§

404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe as or more

severe than one of the enumerated impairments, the Commissioner must find the

claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

REPORT AND RECOMMENDATION - 4

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

1  Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

2  404.1520(g)(1); 416.920(g)(1).  If the claimant is not capable of adjusting to other

3  work, analysis concludes with a finding that the claimant is disabled and is

4  therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

5      The claimant bears the burden of proof at steps one through four above.

6  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

7  step five, the burden shifts to the Commissioner to establish that (1) the claimant is

8  capable of performing other work; and (2) such work "exists in significant

9  numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2);

10  *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

12      Plaintiff filed applications for Title II disability insurance benefits and for

13  Title XVI supplemental security income benefits on February 8, 2013, alleging a

14  disability onset date of May 28, 2010.  Tr. 197-205.  The applications were denied

15  initially, Tr. 146-49, and on reconsideration, Tr. 151-55.  Plaintiff appeared at a

16  hearing before an administrative law judge (ALJ) on September 22, 2015.  Tr. 47-

17  87.  On October 27, 2015, the ALJ denied Plaintiff's claim.  Tr. 18-42.

18      At step one of the sequential evaluation analysis, the ALJ found Plaintiff has

19  not engaged in substantial gainful activity since May 28, 2010.  Tr. 23.  At step

20  two, the ALJ found Plaintiff has the following severe impairments: osteoarthritis of

REPORT AND RECOMMENDATION - 6

the knees, borderline intellectual functional capacity, and a personality disorder.

*Id.* At step three, the ALJ found Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of a listed

impairment. Tr. 26. The ALJ then concluded that from May 2010 to February

2013, Plaintiff had the RFC to perform light work with the following exceptions:

> She could lift and carry up to 20 pounds occasionally and 10 pounds frequently. She could stand and walk up to six hours in an eight-hour workday. There were no sitting limitations. She could occasionally climb stairs and ramps but could not climb ladders, ropes, or scaffolds. She could occasionally balance, bend, stoop, and crouch, but could never crawl. She could not work at unprotected heights or operate heavy machinery or equipment. Mentally, she could perform simple up to three step tasks with occasional detailed work.

Tr. 28.

> The ALJ further concluded that from March 2013 to the date of the decision,

> [W]ith all other listed capabilities and limitations remaining the same, the claimant is able to stand/walk two hours in an eight-hour workday. Additionally, she is unable to kneel, and can only occasionally use vibrating equipment of the lower extremities and occasionally be exposed to extreme cold temperatures.

Tr. 28.

> At step four, the ALJ found Plaintiff is capable of performing past relevant

work as a telephone operator. Tr. 35. Thus, the ALJ concluded Plaintiff has not

been under a disability since May 28, 2010. Tr. 36. On April 24, 2017, the

Appeals Council denied review of the ALJ's decision, Tr. 1-7, making the ALJ's

decision the Commissioner's final decision for purposes of judicial review. *See* 42

U.S.C. § 1383(c)(3).

REPORT AND RECOMMENDATION - 7

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated the medical opinion evidence;

2.  Whether the ALJ properly evaluated the credibility of Plaintiff's testimony; and

3.  Whether the ALJ's step four finding was supported by substantial evidence.

ECF No. 16 at 9.[1]

---

[1] Due to nonconformance with the local rules, the Court ordered that Plaintiff file a praecipe to the motion for summary judgment, ECF Nos. 14, 15, which was subsequently filed, ECF No. 16.  The Court will refer to the praecipe, ECF No. 16, in this Report and Recommendation.

REPORT AND RECOMMENDATION - 8

# DISCUSSION

## A. Medical Opinion Evidence

Plaintiff challenges the ALJ's consideration of the medical opinions of John Arnold, Ph.D.; Frank Rosekrans, Ph.D.; Kayleen Islam-Zwart, Ph.D.; Theresa Wiederhold, ARNP; and Kevin Cardwell, PA.  ECF No. 16 at 12-19.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's.  *Id.* at 1202.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."  *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence."  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater,* 81 F.3d 821, 830-831 (9th Cir. 1995)).

### 1. Dr. Arnold (2012)

Dr. Arnold examined Plaintiff on June 22, 2012, diagnosed dysthymic disorder and personality disorder, and opined Plaintiff was capable of understanding and carrying out simple instructions, could concentrate for short periods of time, could complete simple tasks without close supervision and not disrupt others, that she would work best in positions that have minimal interaction with others, that she could recognize hazards and take appropriate cautions, and that her symptoms would interfere with attendance, productivity, and social interactions. Tr. 395-408. The ALJ assigned this opinion limited weight. Tr. 34. Because Dr. Arnold's opinion was contradicted by Dr. Brown, Tr. 98-100, and Dr. Gardner, Tr. 127-29, the ALJ was required to provide specific and legitimate reasons for rejecting the opinion. *Bayliss*, 427 F.3d at 1216; *see also Widmark v. Barnhart*, 454 F.3d 1063, 1066-67 (9th Cir. 2006).

REPORT AND RECOMMENDATION - 10

1    First, the ALJ concluded this opinion was not supported by Dr. Arnold's

2    own limited findings.  Tr. 34.  A medical opinion may be rejected by the ALJ if it

3    is conclusory, contains inconsistencies, or is inadequately supported.  *Bray*, 554

4    F.3d at 1228; *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  Moreover, a

5    physician's opinion may be rejected if it is unsupported by the physician's

6    treatment notes.  *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003)

7    (affirming ALJ's rejection of physician's opinion as unsupported by physician's

8    treatment notes).  The ALJ observed Dr. Arnold's mental status examination was

9    unremarkable.  Tr. 30 (citing Tr. 399-401).  However, Plaintiff identifies other

10   portions of Dr. Arnold's examination, in which Dr. Arnold noted observing some

11   symptoms of memory loss, difficulty making decisions, poor concentration, and

12   social difficulty.  ECF No. 16 at 12-13 (citing Tr. 395).  Dr. Arnold's report is

13   susceptible to more than one rational interpretation, so the ALJ's ultimate

14   conclusion must be upheld.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

15   The ALJ reasonably concluded that the largely normal mental status examination

16   results were inconsistent with Dr. Arnold's opined limitations.  This was a specific

17   and legitimate reason to discredit Dr. Arnold's opinion.

18   Second, the ALJ concluded Dr. Arnold's opinion on Plaintiff's social

19   limitations was not supported by evidence in the record.  Tr. 34.  Relevant factors

20   to evaluating any medical opinion include the amount of relevant evidence that

1    supports the opinion, the quality of the explanation provided in the opinion, and the

2    consistency of the medical opinion with the record as a whole.  *Lingenfelter v.*

3    *Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th

4    Cir. 2007).  The ALJ found that the record did not show any documentation of

5    significant social functioning limitations.  Tr. 34.  Dr. Arnold's report did indicate

6    that he observed social difficulty/social awkwardness during this examination.  Tr.

7    395.  However, the ALJ reasonably concluded that this minimal observation did

8    not support a finding that Plaintiff experienced significant functional limitations.

9    This was a specific and legitimate reason to discredit Dr. Arnold's opinion.

10       Third, the ALJ concluded this opinion was inconsistent with Plaintiff's daily

11    activities.  Tr. 34.  An ALJ may discount a medical opinion that is inconsistent

12    with a claimant's reported functioning.  *See Morgan v. Comm'r of Soc. Sec.*

13    *Admin*, 169 F.3d 595, 601-02 (1999).  The ALJ observed Plaintiff reported to Dr.

14    Arnold that her daily activities included caring for her dog, grocery shopping,

15    preparing meals, doing laundry, using the computer, volunteering once a month at

16    a local food bank, and talking to friends and family.  Tr. 29; *see* Tr. 396.  The ALJ

17    reasonably concluded that these daily activities were inconsistent with Dr.

18    Arnold's opinion of Plaintiff's limitations in concentration and social functioning.

19    This was a specific and legitimate reason to discredit Dr. Arnold's opinion.

20

REPORT AND RECOMMENDATION - 12

1    Fourth, the ALJ concluded that Dr. Arnold's opined limitations were

2 inconsistent with Plaintiff's work history. Tr. 34. Working with an impairment

3 supports a conclusion that the impairment is not disabling. *See Drouin v. Sullivan*,

4 966 F.2d 1255, 1258 (9th Cir. 1992). When considering a claimant's contention

5 that she cannot work because of her impairments, it is appropriate to consider

6 whether the claimant has not worked for reasons unrelated to her alleged disability.

7 *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001); *Tommasetti v. Astrue*,

8 533 F.3d 1035, 1040 (9th Cir. 2008). Here, the ALJ noted Plaintiff had previously

9 worked at substantial gainful activity levels with the same diagnoses of cognitive

10 and personality disorders. Tr. 29, 34. Plaintiff attributes her impairments to car

11 accidents that occurred in 1996 and 1997. Tr. 59-60. As the ALJ noted, Plaintiff

12 was able earn a community college degree and work at substantial gainful activity

13 levels for years after these car accidents. Tr. 29; *see* Tr. 214-15, 422. The ALJ

14 reasonably concluded that Plaintiff's history of work and higher education after the

15 accidents that caused her impairments indicated Plaintiff's impairments were not

16 disabling. This was a specific and legitimate reason to discredit Dr. Arnold's

17 opinion.

18    Fifth, the ALJ found Dr. Arnold's opinion was inconsistent with Plaintiff's

19 lack of mental health treatment. Tr. 34. An ALJ may discredit a claimant's

20 symptom complaints if the claimant fails to show good reason for failing to follow

REPORT AND RECOMMENDATION - 13

1   treatment recommendations.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir.

2   1996).  However, the fact that a claimant fails to pursue treatment is not directly

3   relevant to the weight of a medical provider's opinion.  *See* 20 C.F.R. §§

4   404.1527(c), 416.927(c).  Without further explanation of how Plaintiff's failure to

5   seek or pursue treatment specifically undermined Dr. Arnold's opinion, this is not

6   a specific and legitimate reason to discredit this opinion.  However, because the

7   ALJ identified several other specific and legitimate reasons to discredit Dr.

8   Arnold's opinion, this error is inconsequential to the overall disability

9   determination and is therefore harmless.  *See Stout v. Comm'r, Soc. Sec. Admin.*,

10   454 F.3d 1050, 1055 (9th Cir. 2006).  The ALJ's treatment of Dr. Arnold's opinion

11   is supported by substantial evidence.

12       *2.  Dr. Arnold (2013)*

13       Dr. Arnold examined Plaintiff again on January 30, 2013, and opined

14   Plaintiff had moderate limitations in her ability to understand, remember, and

15   persist in tasks following detailed instructions; perform activities within a

16   schedule, maintain regular attendance, and be punctual within customary

17   tolerances without special supervision; learn new tasks; make simple work-related

18   decisions; communicate and perform effectively in a work setting; maintain

19   appropriate behavior in a work setting; set realistic goals and plan independently;

20   that Plaintiff had marked limitations in her ability to complete a normal work day

REPORT AND RECOMMENDATION - 14

and work week without interruptions from psychologically based symptoms; that

Plaintiff would exhibit mild to moderate problems in manipulating visual

information.  Tr. 352-54.  The ALJ gave this opinion little weight.  Tr. 34.

Because Dr. Arnold's opinion was contradicted by Dr. Brown, Tr. 98-100, and Dr.

Gardner, Tr. 127-29, the ALJ was required to provide specific and legitimate

reasons for rejecting the opinion.  *Bayliss*, 427 F.3d at 1216; *see also Widmark*,

454 F.3d at 1066-67.

First, the ALJ discredited Dr. Arnold's opinion because it was not explained.

Tr. 34.  A medical opinion may be rejected by the ALJ if it is conclusory, contains

inconsistencies, or is inadequately supported.  *Bray*, 554 F.3d at 1228; *Thomas*,

278 F.3d at 957.  Moreover, a physician's opinion may be rejected if it is

unsupported by the physician's treatment notes.  *See Connett*, 340 F.3d at 875.

Here, the ALJ observed Dr. Arnold's opined limitations changed between his 2012

and 2013 examinations, but that Plaintiff's conditions did not change in the six

month period between his evaluations.  Tr. 34.  Dr. Arnold's mental status

examination results were largely the same between 2012 and 2013.  Tr. 351-57,

395-401.  Despite this consistency, Dr. Arnold opined significantly more severe

limitations in the 2013 report.  *Compare* Tr. 396 *with* Tr. 353-54.  Dr. Arnold's

2013 opinion references his 2012 opinion, but does not explain why his opinion

changed over time.  Tr. 351-59.  The ALJ reasonably concluded that the lack of

REPORT AND RECOMMENDATION - 15

1  supporting explanation for Dr. Arnold's changed opinion entitled it to less weight.

2  This was a specific and legitimate reason to discredit Dr. Arnold's 2013 opinion.

3      Second, the ALJ found Dr. Arnold's opinion was inconsistent with

4  Plaintiff's daily activities.  Tr. 34.  An ALJ may discount a medical opinion that is

5  inconsistent with a claimant's reported functioning.  *See Morgan*, 169 F.3d at 601-

6  02.  The ALJ identified many of Plaintiff's daily activities that were inconsistent

7  with Dr. Arnold's opined limitations, including independent living, going to the

8  park, taking care of a dog, and volunteering at a food bank.  Tr. 32; *see* Tr. 396,

9  455.  This was a specific and legitimate reason to discredit Dr. Arnold's 2013

10  opinion.

11      Third, the ALJ found Dr. Arnold's 2013 opinion was inconsistent with

12  Plaintiff's past ability to work at substantial gainful activity levels.  Tr. 34.

13  Working with an impairment supports a conclusion that the impairment is not

14  disabling.  *See Drouin*, 966 F.2d at 1258.  As mentioned *supra*, Plaintiff attributes

15  her impairments to car accidents that occurred in 1996 and 1997.  Tr. 59-60.  As

16  the ALJ noted, Plaintiff was able to earn a community college degree and work at

17  substantial gainful activity levels after these car accidents.  Tr. 29; *see* Tr. 214-15,

18  422.  The ALJ reasonably concluded that Plaintiff's history of work and higher

19  education after the accidents that caused her impairments indicated Plaintiff's

20

REPORT AND RECOMMENDATION - 16

impairments were not disabling.  This was a specific and legitimate reason to discredit Dr. Arnold's opinion.

Finally, the ALJ found this opinion inconsistent with Plaintiff's lack of mental health treatment.  Tr. 34.  An ALJ may discredit a claimant's symptom complaints if the claimant fails to show good reason for failing to follow treatment recommendations.  *Smolen*, 80 F.3d at 1284.  However, as discussed *supra*, the fact that a claimant fails to pursue treatment is not directly relevant to the weight of a medical provider's opinion.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).  Without further explanation of how Plaintiff's failure to seek or pursue treatment specifically undermined Dr. Arnold's opinion, this is not a specific and legitimate reason to discredit this opinion.  However, because the ALJ identified several other specific and legitimate reasons to discredit Dr. Arnold's opinion, this error is inconsequential to the overall disability determination and is therefore harmless.  *See Stout*, 454 F.3d at 1055.  The ALJ's treatment of Dr. Arnold's 2013 opinion is supported by substantial evidence.

### 3.  Dr. Rosekrans

Dr. Rosekrans evaluated Plaintiff on July 18, 2013, and opined Plaintiff had moderate limitations in her ability to understand, remember, and persist in tasks by following detailed instructions and in her ability to learn new tasks; and marked limitations in her ability to perform activities within a schedule, maintain regular

attendance, and be punctual within customary tolerances without special

supervision; communicate effectively in a work setting; complete a normal work

day and work week without interruptions from psychologically based symptoms;

and maintain appropriate behavior in a work setting.  Tr. 424.  The ALJ assigned

little weight to Dr. Rosekrans' opinion.  Tr. 34-35.  Because Dr. Rosekrans'

opinion was contradicted by Dr. Brown, Tr. 98-100, and Dr. Gardner, Tr. 127-29,

the ALJ was required to provide specific and legitimate reasons for rejecting Dr.

Rosekrans' opinion.  *Bayliss*, 427 F.3d at 1216; *see also Widmark*, 454 F.3d at

1066-67.

    First, the ALJ found Dr. Rosekrans' opinion was not supported by his own

examination findings.  Tr. 35.  A medical opinion may be rejected by the ALJ if it

is conclusory, contains inconsistencies, or is inadequately supported.  *Bray*, 554

F.3d at 1228; *Thomas*, 278 F.3d at 957.  Moreover, a physician's opinion may be

rejected if it is unsupported by the physician's treatment notes.  *See Connett*, 340

F.3d at 875.  Dr. Rosekrans' CTMT testing yielded a mix of average and below

average results, indicating a mild to moderate impairment.  Tr. 431.  Dr.

Rosekrans' WAIS-IV testing showed low average to borderline results.  Tr. 435.

Dr. Rosekrans' WMS-III testing showed a range of average, low average, and

borderline test results.  Tr. 440.  The ALJ reasonably concluded that these mixed

test results did not support Dr. Rosekrans' findings of moderate to marked

REPORT AND RECOMMENDATION - 18

limitations.  Tr. 35.  This was a specific and legitimate reason to discredit Dr. Rosekrans' opinion.

Second, the ALJ found Dr. Rosekrans' opinion was not supported by the medical evidence.  Tr. 35.  Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole.  *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631.  Here, the ALJ concluded that the record showed "no evidence the claimant is unable to maintain socially appropriate behavior, perform within a schedule, or communicate in a work setting."  Tr. 35.  Although Dr. Arnold observed signs of social difficulty/social awkwardness during his 2012 examination, the ALJ reasonably concluded that this minimal observation is not significant enough to support a finding that Plaintiff was unable to maintain socially appropriate behavior.  Tr. 395.  This lack of supporting evidence was a specific and legitimate reason to discredit Dr. Rosekrans' opinion.

Third, the ALJ found Dr. Rosekrans' opinion was inconsistent with Plaintiff's daily activities.  Tr. 35.  An ALJ may discount a medical opinion that is inconsistent with a claimant's reported functioning.  *See Morgan*, 169 F.3d at 601-02.  As discussed *supra*, the ALJ identified several of Plaintiff's daily activities that were inconsistent with Dr. Rosekrans' opined limitations, including

REPORT AND RECOMMENDATION - 19

independent living, going to the park, taking care of a dog, and volunteering at a food bank. Tr. 32; *see* Tr. 396, 455. This was a specific and legitimate reason to discredit Dr. Rosekrans' opinion.

Fourth, the ALJ found Dr. Rosekrans' opinion was inconsistent with Plaintiff's work history. Tr. 35. Working with an impairment supports a conclusion that the impairment is not disabling. *See Drouin*, 966 F.2d at 1258. Plaintiff attributes her impairments to car accidents that occurred in 1996 and 1997. Tr. 59-60. As the ALJ noted, Plaintiff was able to earn a community college degree and work at substantial gainful activity levels after these car accidents. Tr. 29; *see* Tr. 214-15, 422. The ALJ reasonably concluded that Plaintiff's history of work and higher education after the accidents that caused her impairments indicated Plaintiff's impairments were not disabling. This was a specific and legitimate reason to discredit Dr. Rosekrans' opinion.

Fifth, the ALJ found Dr. Rosekrans' opinion was inconsistent with Plaintiff's lack of mental health treatment. Tr. 35. As discussed *supra*, without further explanation of how Plaintiff's failure to seek or pursue treatment specifically undermined Dr. Rosekrans' opinion, this is not a specific and legitimate reason to discredit this opinion. However, because the ALJ identified several other specific and legitimate reasons to discredit Dr. Rosekrans' opinion, this error is inconsequential to the overall disability determination and is therefore

1    harmless.  *See Stout*, 454 F.3d at 1055.  The ALJ's treatment of Dr. Rosekrans'

2    opinion is supported by substantial evidence.

3        *4.  Dr. Islam-Zwart*

4        Dr. Islam-Zwart examined Plaintiff on May 19, 2015, and opined Plaintiff

5    had moderate impairments in her ability to understand, remember, and persist in

6    tasks by following very short and simple instructions; perform activities within a

7    schedule, maintain regular attendance, and be punctual within customary

8    tolerances without special supervision; perform routine tasks without special

9    supervision; make simple work-related decisions; be aware of normal hazards and

10   take appropriate precautions; ask simple questions or request assistance; maintain

11   appropriate behavior in a work setting; and set realistic goals and plan

12   independently; and marked limitations in her ability to understand, remember, and

13   persist in tasks by following detailed instructions; learn new tasks; adapt to

14   changes in a routine work setting; communicate and perform effectively in a work

15   setting; and complete a normal work day and work week without interruptions

16   from psychologically based symptoms.  Tr. 451.  The ALJ assigned this opinion

17   little weight.  Tr. 35.  Because Dr. Islam-Zwart's opinion was contradicted by Dr.

18   Brown, Tr. 98-100, and Dr. Gardner, Tr. 127-29, the ALJ was required to provide

19   specific and legitimate reasons for rejecting the opinion.  *Bayliss*, 427 F.3d at

20   1216; *see also Widmark*, 454 F.3d at 1066-67.

REPORT AND RECOMMENDATION - 21

1    First, the ALJ discredited Dr. Islam-Zwart's opinion because it was

2 speculative as to Plaintiff's history of accommodation at school and work.  Tr. 35.

3 *See Coaty v. Colvin*, 673 Fed. Appx. 787, 788 (9th Cir. 2017) (affirming ALJ's

4 determination that medical opinion was speculative), *cert denied sub nom.*, *Coaty*

5 *v. Berryhill*, 137 S. Ct. 2309 (2017).  Dr. Islam-Zwart noted Plaintiff "describes

6 completing an associate's degree and being consistently employed since her head

7 injury, but it seems likely that there was an accommodation in both cases."  Tr.

8 456.  However, there is no basis in the record to support Dr. Islam-Zwart's

9 conjecture.  The ALJ reasonably concluded that Dr. Islam-Zwart's opinion was

10 entitled to less weight because it was based on this speculation.  This was a

11 specific and legitimate reason to discredit Dr. Islam-Zwart's opinion.

12    Second, the ALJ concluded Dr. Islam-Zwart's opined limitations were

13 inconsistent with Plaintiff's independence in her activities of daily living.  Tr. 35.

14 An ALJ may discount a medical opinion that is inconsistent with a claimant's

15 reported functioning.  *See Morgan*, 169 F.3d at 601-02.  Plaintiff reported her daily

16 activities included performing light chores, preparing her own meals, shopping

17 independently, caring for her dog, volunteering at a local food bank, going to the

18 park, and gardening.  Tr. 352, 396, 455.  The ALJ reasonably concluded these

19 activities were inconsistent with Dr. Islam-Zwart's opined limitations.  This is a

20

REPORT AND RECOMMENDATION - 22

1    specific and legitimate reason to discredit Dr. Islam-Zwart's opinion.  The ALJ's

2    treatment of Dr. Islam-Zwart's opinion is supported by substantial evidence.

3        *5. ARNP Wiederhold and PA Cardwell*

4        Plaintiff challenges the ALJ's consideration of the opinions of ARNP

5    Wiederhold and PA Cardwell.  ECF No. 16 at 19.  However, Plaintiff fails to make

6    any argument regarding this evidence, stating only that the ALJ "essentially

7    disregarded these opinions for reasons that are not legitimate or specific."  *Id.*

8    Because Plaintiff failed to make any argument in support of this assertion, Plaintiff

9    has waived argument on this issue.  *See Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir.

10    1998) (the Court may not consider on appeal issues not "specifically and distinctly

11    argued" in the party's opening brief); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533

12    F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining Court may decline to address on

13    the merits issues not argued with specificity).  The Court declines to address this

14    issue.

15    **B. Plaintiff's Symptom Claims**

16        Plaintiff faults the ALJ for failing to rely on reasons that were clear and

17    convincing in discrediting her subjective symptom claims.  ECF No. 16 at 10-11.

18    An ALJ engages in a two-step analysis to determine whether a claimant's

19    testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must

20    determine whether there is objective medical evidence of an underlying

REPORT AND RECOMMENDATION - 23

1  impairment which could reasonably be expected to produce the pain or other

2  symptoms alleged." *Molina,* 674 F.3d at 1112 (internal quotation marks omitted).

3  "The claimant is not required to show that her impairment could reasonably be

4  expected to cause the severity of the symptom she has alleged; she need only show

5  that it could reasonably have caused some degree of the symptom." *Vasquez v.*

6  *Astrue,* 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

7       Second, "[i]f the claimant meets the first test and there is no evidence of

8  malingering, the ALJ can only reject the claimant's testimony about the severity of

9  the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

10  rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting

11  *Lingenfelter,* 504 F.3d at 1036). "General findings are insufficient; rather, the ALJ

12  must identify what testimony is not credible and what evidence undermines the

13  claimant's complaints." *Id.* (quoting *Lester,* 81 F.3d at 834); *Thomas,* 278 F.3d at

14  958 ("[T]he ALJ must make a credibility determination with findings sufficiently

15  specific to permit the court to conclude that the ALJ did not arbitrarily discredit

16  claimant's testimony."). "The clear and convincing [evidence] standard is the most

17  demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

18  1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920,

19  924 (9th Cir. 2002)).

20

In making an adverse credibility determination, the ALJ may consider, *inter alia,* (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas,* 278 F.3d at 958-59.

The ALJ found that Plaintiff's medically determinable impairments could cause Plaintiff's alleged symptoms, but that Plaintiff's testimony about the severity of her symptoms was not entirely credible. Tr. 28.

*1. Inconsistent with Medical Evidence*

The ALJ found that several of Plaintiff's symptom complaints were inconsistent with the medical evidence. Tr. 29-32. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c), 416.929(c) (2011).

REPORT AND RECOMMENDATION - 25

1    Here, the ALJ identified several inconsistencies between Plaintiff' testimony

2  and the medical evidence.  Tr. 29-32.  For example, Plaintiff testified to disabling

3  knee pain.  Tr. 59-60.  However, the ALJ observed that objective imaging of

4  Plaintiff's knees showed mild findings at most.  Tr. 29 (citing Tr. 378).  Physical

5  examinations of Plaintiff's knees similarly failed to corroborate Plaintiff's

6  symptom testimony.  Tr. 366-67 (normal physical examination, range of motion

7  within normal limits); Tr. 604 (no swelling of knees, some tenderness in left knee,

8  Plaintiff refused to perform range of motion testing in knees due to fear of

9  dislocating them); Tr. 413 (Plaintiff did not complete range of motion testing).

10  Plaintiff also testified to disabling depression and anxiety.  Tr. 68-69.  However,

11  the ALJ observed the medical record did not corroborate these complaints.  Tr. 29-

12  32; *see* Tr. 356-57 (normal mental status examination); Tr. 399-401 (normal

13  mental status examination); Tr. 425 (Plaintiff did not report depression or anxiety).

14  The ALJ reasonably interpreted the medical evidence as being inconsistent with

15  Plaintiff's symptom complaints.

16    *2. Failure to Seek Treatment*

17    The ALJ found Plaintiff's failure to seek treatment undermined her

18  subjective symptom testimony.  Tr. 29, 31-32.  Unexplained, or inadequately

19  explained, failure to seek treatment or follow a prescribed course of treatment may

20  be the basis for an adverse credibility finding unless there is a showing of a good

REPORT AND RECOMMENDATION - 26

1  reason for the failure.  *See Orn*, 495 F.3d at 638.  Dr. Arnold referred Plaintiff for

2  counseling on June 22, 2012.  Tr. 401.  However, the record shows Plaintiff did not

3  seek counseling until May 2014.  Tr. 442-47.  Plaintiff offers no explanation for

4  her failure to seek treatment and fails to address the ALJ's finding in her brief.

5  ECF No. 16 at 10-11; ECF No. 18 at 2.  The ALJ reasonably concluded that

6  Plaintiff's failure to seek treatment for such a long period of time indicated that

7  Plaintiff's symptoms were not as severe as alleged.

8         *3.  History of Working with Impairments*

9         The ALJ found Plaintiff's work history was inconsistent with her subjective

10 symptom testimony.  Tr. 29.  Working with an impairment supports a conclusion

11 that the impairment is not disabling.  *See Drouin*, 966 F.2d at 1258; *see also Bray*,

12 554 F.3d at 1227 (seeking work despite impairment supports inference that

13 impairment is not disabling).  Plaintiff attributed her impairments to car accidents

14 that occurred in 1996 and 1997.  Tr. 59-60.  The ALJ also observed that Plaintiff

15 was diagnosed with cognitive and personality disorders in 2000.  Tr. 29; *see* Tr.

16 392.  However, the ALJ noted Plaintiff worked at substantial gainful activity levels

17 following the onset of these impairments.  Tr. 29; *see* Tr. 215.  Plaintiff also

18 indicated throughout the record that she was seeking work during the period of

19 alleged disability.  Tr. 29; *see* Tr. 341 (Plaintiff stated she was looking for work on

20 September 13, 2012); Tr. 447 (Plaintiff expressed interest in finding employment

REPORT AND RECOMMENDATION - 27

1  on July 2, 2014, and September 29, 2014).  The ALJ reasonably concluded that

2  Plaintiff's history of working with her impairments and continuing to seek work

3  despite her impairments supported the conclusion that Plaintiff's impairments were

4  not disabling.  This was a clear and convincing reason to discredit Plaintiff's

5  subjective symptom claims.

6      *4.  Activities of Daily Living*

7      The ALJ found that Plaintiff's daily activities were inconsistent with the

8  level of impairment she alleged.  Tr. 29.  A claimant's reported daily activities can

9  form the basis for an adverse credibility determination if they consist of activities

10 that contradict the claimant's "other testimony" or if those activities are

11 transferable to a work setting.  *Orn,* 495 F.3d at 639; *see also Fair*, 885 F.2d at 603

12 (daily activities may be grounds for an adverse credibility finding "if a claimant is

13 able to spend a substantial part of his day engaged in pursuits involving the

14 performance of physical functions that are transferable to a work setting.").

15 "While a claimant need not vegetate in a dark room in order to be eligible for

16 benefits, the ALJ may discredit a claimant's testimony when the claimant reports

17 participation in everyday activities indicating capacities that are transferable to a

18 work setting" or when activities "contradict claims of a totally debilitating

19 impairment."  *Molina*, 674 F.3d at 1112-13 (internal quotation marks and citations

20 omitted).

REPORT AND RECOMMENDATION - 28

1    Here, Plaintiff testified that she can only walk for two blocks at a time, that

2    she can stand for half an hour at a time, that she avoids bending over to pick things

3    up, and that she can lift less than five pounds. Tr. 65, 67. However, the ALJ

4    identified several of Plaintiff's daily activities that were inconsistent with this level

5    of functioning. Tr. 29-32; *see* Tr. 352 (Plaintiff reported performing light chores,

6    preparing her own meals, and shopping independently); Tr. 366 (Plaintiff reported

7    sweeping, scrubbing the tub and toilet, and doing her own laundry); Tr. 396

8    (Plaintiff reported caring for her dog, volunteering at a local food bank, performing

9    her own housework, preparing her own meals, and shopping independently); Tr.

10    455 (Plaintiff reported housework, being independent in hygiene, going to the

11    park, and gardening). Plaintiff also testified to significant impairments in her

12    memory and concentration. Tr. 69. However, the ALJ observed Plaintiff was able

13    to complete a community college degree after the accidents. Tr. 29; *see* Tr. 454.

14    The ALJ reasonably concluded that Plaintiff's activities were inconsistent with the

15    level of impairment she alleged. This was a clear and convincing reason to

16    discredit Plaintiff's subjective symptom claims.

17    **C. Substantial Evidence**

18    Plaintiff contends the ALJ's step four and step five findings were based on

19    an improper RFC formulation. ECF No. 16 at 20. However, Plaintiff's argument

20    is based entirely on the assumption that the ALJ erred in considering the medical

REPORT AND RECOMMENDATION - 29

1  opinion evidence and Plaintiff's symptom claims.  *Id.*  For reasons discussed

2  throughout this decision, the ALJ's consideration of Plaintiff's symptom claims

3  and consideration of the medical opinion evidence are legally sufficient and

4  supported by substantial evidence.[2]  Thus, the ALJ did not err in assessing the RFC

5  or finding Plaintiff capable of performing work existing in the national economy.

**CONCLUSION**

7       Having reviewed the record and the ALJ's findings, this court concludes the

8  ALJ's decision is not supported by substantial evidence and free of harmful legal

9  error.  Accordingly, **IT IS HEREBY RECOMMENDED**:

10       1. Plaintiff's Motion for Summary Judgment, ECF No. 14, be DENIED.

11       2. Defendant's Motion for Summary Judgment, ECF No. 17, be GRANTED.

12       3. The Court enter JUDGMENT in favor of Defendant.

**OBJECTIONS**

14       Any party may object to a magistrate judge's proposed findings,

15  recommendations or report within **fourteen (14)** days following service with a

_____

17  [2] Plaintiff also seems to challenge the ALJ's consideration of lay witness evidence

18  from Hubert Dyche.  ECF No. 16 at 20.  However, because Plaintiff fails to raise

19  this argument with any sort of specificity, this argument is waived.  *See Kim v.*

20  *Kang*, 154 F.3d at 1000; *Carmickle*, 533 F.3d at 1161 n.2

REPORT AND RECOMMENDATION - 30

copy thereof.  Such party shall file written objections with the Clerk of the Court and serve objections on all parties, specifically identifying the portions to which objection is being made, and the basis therefor.  Any response to the objection shall be filed within **fourteen (14)** days after receipt of the objection.  Attention is directed to FED. R. CIV. P. 6(d), which adds additional time after certain kinds of service.

A district judge will make a *de novo* determination of those portions to which objection is made and may accept, reject or modify the magistrate judge's determination.  The judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon.  The judge may, but is not required to, accept or consider additional evidence, or may recommit the matter to the magistrate judge with instructions.  *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72; LMR 4, Local Rules for the Eastern District of Washington.

A magistrate judge's recommendation cannot be appealed to a court of appeals; only the district judge's order or judgment can be appealed.

REPORT AND RECOMMENDATION - 31

1    The District Court Executive is directed to enter this Report and

2  Recommendation, forward a copy to Plaintiff and counsel, and **SET A CASE**

3  **MANAGEMENT DEADLINE ACCORDINGLY.**

4    DATED June 22, 2018.

5                              _s/Mary K. Dimke_
                            MARY K. DIMKE
6                  UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

REPORT AND RECOMMENDATION - 32